ORIGINAL

FILED IN CLERK'S OFFICE
U.S. BANKRUPTCY COURT
NDGGA ROME DIVISION

2017 SEP - I  AM II: 05

M. REGINA THOMAS
CLERK

BY: _____
DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

In re:                              :
                                    :
BEAULIEU GROUP, LLC,                :       CASE NO. 17-41677-MGD
                                    :       CHAPTER: 11
        Debtor.                     :

## NANCY BROGDON'S
## MOTION FOR RELIEF FROM THE AUTOMATIC STAY

COMES NOW Movant, NANCY BROGDON, (hereinafter "Movant"), and

shows this Court the following:

1.

This filing is a motion under 11 U.S.C. § 362(d)(1) for relief from the

automatic stay imposed pursuant to 11 U.S.C. § 362(a)(1). Movant seeks to further

her claims against Debtor Beaulieu Group, LLC ("Debtor") and recover from said

Debtor's commercial general liability policy insurer (Zurich American Insurance

Company (hereinafter "Zurich")) for damages arising out of a September 9, 2015

incident at Debtor's facility.

2.

On September 9, 2015, Movant worked for B & B Janitorial, Inc. performing

janitorial services at Debtor's facility located at 1502 Coronet Drive, Dalton,

Whitfield County, Georgia 30722. While walking in a pedestrian travel lane in

1

Debtor's facility, Plaintiff was struck by a forklift improperly operated by one of Debtor's employees, William Brindle. Movant, who was 72 years old at the time of the incident, suffered four (4) broken ribs, a tibial plateau fracture, and a head injury. Movant would undergo two surgeries and she would spend nearly a month in a rehabilitation hospital. A future knee replacement is a possibility. To date, Movant's medical expenses total nearly $110,000.

3.

On October 1, 2015 Movant filed suit against Debtor. William Brindle (the forklift driver) was later added as a part defendant after his identity was revealed during written discovery. The case is styled as <u>Nancy Brogdon v. Beaulieu of America, Inc. and William Brindle</u>, pending in the Superior Court of Whitfield County, Georgia, Civil Action File No. 15-CI-1379-W.

4.

The parties have been litigating the case for nearly two years. Discovery is nearly complete and trial is on the horizon. However, on July 21, 2017, Debtor served in the Whitfield County action a *Suggestion of Bankruptcy and Notice of Operation of Automatic Stay* informing Movant that Debtor had filed Chapter 11 Bankruptcy in this Court. That led to Movant filing the instant motion.

2

5.

Prior to Movant's incident, Zurich issued a commercial general liability policy (No. GLO 3878433-09) to Debtor with a policy limits of $1 million per occurrence. The Policy was in effect at the time of Movant's incident.   The pertinent portions of the Policy are attached hereto as Exhibit "A."[1]

6.

The Policy provides coverage to Debtor for Movant's incident.  Specifically, the Policy states as follows:

**SECTION I - COVERAGES**
**COVERAGE   A   -   BODILY   INJURY   AND**
**PROPERTY DAMAGE LIABILITY**

1.   **Insuring Agreement**

a.   We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. * * *

---

[1] In the interests of brevity, only the pertinent portions of the Policy are attached hereto as Exhibit "A."  The full Policy is in excess of 100 pages.

3

(See Ex. "A" at BEAULIEU 000161).

7.

In the *Conditions* section of the Policy, it provides:

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

### 1.    Bankruptcy

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

(See Ex. "A" at BEAULIEU 000171).

7.

In an endorsement to the Policy, it is added that Debtor has a deductible of $250,000. (See Ex. "A" at BEAULIEU 000182). The endorsement provides:

### G.    Conditions

\*    \*    \*

### 3.    Payment of Amounts Owed Under This Endorsement

a.    We may pay any part or all of any Deductible Amount(s) or "allocated loss adjustment expense" to effect settlement of any claim and, upon notification of the action taken you will reimburse us for such part of any Deductible Amount(s) or "allocated

4

> loss adjustment expense" as shown on the billing from us. You must pay us for all amounts for which you are responsible under this endorsement and reimburse us for any such amounts that we pay by the due date shown on the billing from us.
>
> *     *     *

(See Ex. "A" at BEAULIEU 000186). In other words, Zurich may pay the deductible and any "allocated loss adjustment expense" (i.e., defense costs) to effect settlement of Movant's claim. Zurich is then free, should it so choose, to seek reimbursement from Debtor.

### 8.

In the state court litigation, Movant is seeking to establish liability against Debtor up to Zurich's $1 million in policy limits. As a result, Movant's claim will not decrease or waste Debtor's estate or otherwise affect the Debtor's interests.

### 8.

"Section 362(d)(1) of the Bankruptcy Code permits a bankruptcy court to terminate, annul, modify, or condition the stay for 'cause.'" Groover v. R. J. Groover Constr., L.L.C. (In re R. J. Groover Constr.), 411 B.R. 460, 463 (Bankr. S.D. Ga. 2008). "What constitutes 'cause' is based on the totality of the circumstances in the

particular case." Egwineke v. Robertson (In re Robertson), 244 B.R. 880, 882

(Bankr. N.D. Ga. 2000).

9.

"In determining whether to lift the stay to permit litigation to proceed against

the debtor, the Court considers three factors: 1) whether any great prejudice to either

the bankruptcy estate or the debtor will result from prosecution of the lawsuit; 2)

whether the hardship to the non-debtor party by continuation of the automatic stay

considerably outweighs the hardship to the debtor; and 3) whether the movant has a

probability of success on the merits of his case." In re Andersen 2000, Inc., 2006

Bankr. LEXIS 1133 (Bankr. N.D. Ga. 2006).

10.

As to the first prong, Debtor will not suffer prejudice from Movant's personal

injury law suit moving forward.  As noted above, Movant is simply seeking to

establish liability against Debtor to the extent of the insurance coverage provided by

Zurich.  Debtor's assets would not be used to pay Movant. Moreover, while Debtor's

employees may be called on to provide testimony at a trial, that is not, as a matter of

law, a substantial burden on Debtor. Id. at 8-9.  Thus, Debtor will not suffer any

prejudice in the event this Court allows Movant's Whitfield County action to

proceed.

6

11.

With respect to the second prong, the hardship to Movant by continuing the automatic stay considerably outweighs the hardship to Debtor. Movant is currently 74 years old and she has already waited for nearly two years to have her day in court. Forcing her to wait additional time while the Debtor's bankruptcy proceeds is unconscionable. Moreover, there is no hardship to Debtor by lifting the stay. It is Zurich on whom the financial burden will rest should Movant's claim be successful. Thus, the second prong favors Movant.

11.

Finally, as to the third prong, Movant has a probability of success on the merits. Movant was a pedestrian walking in a pedestrian only travel lane when Debtor's employee struck her with a fork lift. In terms of her damages, Movant suffered four (4) broken ribs, a tibial plateau fracture, and a head injury. She has undergone two surgeries and she spent nearly a month in a rehabilitation hospital immediately following the incident. A future knee replacement is a possibility. To date, Movant's medical expenses total nearly $110,000. Thus, Movant has a high probability of success on the merits of her case.

12.

Notice of this Motion has been provided to the Office of the United States Trustee and Counsel to Debtors. In light of the nature of the relief requested, Movant submits that no further notice is necessary and Movant requests the Court's approval of this procedure.

WHEREFORE, Movant requests:

(a)    Schedule an expedited hearing on this matter;

(b)    Approve the notice procedures requested herein in connection with the hearing on this Motion;

(c)    Enter an order relieving Movant from the automatic stay and allowing Movant to proceed with the litigation and pursue judgment against Debtor to the extent of the available insurance proceeds; and

(d)    Such other and further relief as the Court deems just and proper.

*[signature line on following page]*

8

VAN SANT LAW, LLC

DAVID M. VAN SANT
Georgia Bar No. 725222
MICHAEL W. HORST
Georgia Bar No. 367837
*Counsel for Movant*

123 Tribble Gap Road
Cumming, GA 30040
T: 770.886.9199
F: 770.886.9133
E: david@vansantlaw.com
    michael@vansantlaw.com

9

## CERTIFICATE OF SERVICE

I hereby certify that on August 31, 2017, I served a copy of the within and foregoing NANCY BROGDON'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY by first class U. S. Mail, with adequate postage prepaid on the following persons or entities at the addresses stated:

J. Robert Williamson, Esq.
Ashley Reynolds Ray, Esq.
Matthew W. Levin, Esq.
Scroggins & Williamson, P.C.
4401 Northside Parkway
Suite 450
Atlanta, Georgia 30327

Martin P. Ochs, Esq.
Office of the U. S. Trustee
362 Richard Russell Federal Bldg.
75 Ted Turner Drive, SW
Atlanta, GA 30303

VAN SANT LAW, LLC

DAVID M. VAN SANT
Georgia Bar No. 725222
MICHAEL W. HORST
Georgia Bar No. 367837
*Counsel for Movant*

123 Tribble Gap Road
Cumming, GA 30040
T: 770.886.9199
F: 770.886.9133
E: david@vansantlaw.com
   michael@vansantlaw.com

10

### COMMERCIAL GENERAL LIABILITY COVERAGE PART DECLARATIONS

Policy Number: GLO 3878433-09

## ZURICH AMERICAN INSURANCE COMPANY

Named Insured BEAULIEU GROUP, LLC

Policy Period: Coverage begins  06-01-2015  at 12:01 A.M.; Coverage ends  06-01-2016  at 12:01 A.M.

Producer Name: PRITCHARD & JERDEN, INC.          Producer No. 28627-000

| Item 1. Business Description: CARPETS & RUGS |
|---|

**Item 2.** Limits of Insurance

| GENERAL AGGREGATE LIMIT | $  2,000,000 | |
|---|---|---|
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $  2,000,000 | |
| EACH OCCURRENCE LIMIT | $  1,000,000 | |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | $     50,000 | Any one premises |
| MEDICAL EXPENSE LIMIT | $     10,000 | Any one person |
| PERSONAL AND ADVERTISING INJURY LIMIT | $  1,000,000 | Any one person or organization |

**Item 3.** Retroactive Date  (CG 00 02 ONLY)

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" offense which occurs before the Retroactive Date, if any, shown here:     NONE

(Enter Date or "None" if no Retroactive Date applies)

**Item 4.** Form of Business and Location Premises

Form of Business: LIMITED LIABILITY COMPANY

Location of All Premises You Own, Rent or Occupy: **See Schedule of Locations**

**Item 5.** Schedule of Forms and Endorsements

Form(s) and Endorsement(s) made a part of this Policy at time of issue:
**See Schedule of Forms and Endorsements**

**Item 6.** Premiums

| Coverage Part Premium: | ▮▮▮▮▮▮ |
|---|---|
| Other Premium: | |
| Total Premium: | ▮▮▮▮▮▮ |



EXHIBIT A

BEAULIEU 000150   U-GL-D-150-D CW (9/04)

# COMMERCIAL GENERAL LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section II – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section V – Definitions.

## SECTION I – COVERAGES

### COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

(2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b. This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2) The "bodily injury" or "property damage" occurs during the policy period; and

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

e. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

© Insurance Services Office, Inc., 2012

BEAULIEU 000161

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**b. Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)** That the insured would have in the absence of the contract or agreement; or

**(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

**c. Liquor Liability**

"Bodily injury" or "property damage" for which any insured may be held liable by reason of:

**(1)** Causing or contributing to the intoxication of any person;

**(2)** The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

**(3)** Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in:

**(a)** The supervision, hiring, employment, training or monitoring of others by that insured; or

**(b)** Providing or failing to provide transportation with respect to any person that may be under the influence of alcohol;

if the "occurrence" which caused the "bodily injury" or "property damage", involved that which is described in Paragraph **(1)**, **(2)** or **(3)** above.

However, this exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages. For the purposes of this exclusion, permitting a person to bring alcoholic beverages on your premises, for consumption on your premises, whether or not a fee is charged or a license is required for such activity, is not by itself considered the business of selling, serving or furnishing alcoholic beverages.

**d. Workers' Compensation And Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e. Employer's Liability**

"Bodily injury" to:

**(1)** An "employee" of the insured arising out of and in the course of:

**(a)** Employment by the insured; or

**(b)** Performing duties related to the conduct of the insured's business; or

**(2)** The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **(1)** above.

This exclusion applies whether the insured may be liable as an employer or in any other capacity and to any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

© Insurance Services Office, Inc., 2012 CG 00 01 04 13

BEAULIEU 000162

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

    (a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

    (b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

**g. Aircraft, Auto Or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

    (a) Less than 26 feet long; and

    (b) Not being used to carry persons or property for a charge;

(3) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

(5) "Bodily injury" or "property damage" arising out of:

    (a) The operation of machinery or equipment that is attached to, or part of, a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged; or

    (b) The operation of any of the machinery or equipment listed in Paragraph **f.(2)** or **f.(3)** of the definition of "mobile equipment".

**h. Mobile Equipment**

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

**i. War**

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**j. Damage To Property**

"Property damage" to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

© Insurance Services Office, Inc., 2012

**CG 00 01 04 13**

BEAULIEU 000164

**(4)** Personal property in the care, custody or control of the insured;

**(5)** That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

**(6)** That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs **(1)**, **(3)** and **(4)** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage To Premises Rented To You as described in Section III – Limits Of Insurance.

Paragraph **(2)** of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs **(3)**, **(4)**, **(5)** and **(6)** of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

**k. Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l. Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m. Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)** A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

**(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

**n. Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

**(1)** "Your product";

**(2)** "Your work"; or

**(3)** "Impaired property";

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

**o. Personal And Advertising Injury**

"Bodily injury" arising out of "personal and advertising injury".

**p. Electronic Data**

Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate electronic data.

However, this exclusion does not apply to liability for damages because of "bodily injury".

As used in this exclusion, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**q. Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury" or "property damage" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

Exclusions **c.** through **n.** do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section **III** – Limits Of Insurance.

## COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY

### 1. Insuring Agreement

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section **III** – Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B** or medical expenses under Coverage **C.**

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B.**

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

### 2. Exclusions

This insurance does not apply to:

**a. Knowing Violation Of Rights Of Another**

"Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

**b. Material Published With Knowledge Of Falsity**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material, if done by or at the direction of the insured with knowledge of its falsity.

**c. Material Published Prior To Policy Period**

"Personal and advertising injury" arising out of oral or written publication, in any manner, of material whose first publication took place before the beginning of the policy period.

**d. Criminal Acts**

"Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

**e. Contractual Liability**

"Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

**f. Breach Of Contract**

"Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

**g. Quality Or Performance Of Goods – Failure To Conform To Statements**

"Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement".

**h. Wrong Description Of Prices**

"Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

    © Insurance Services Office, Inc., 2012    CG 00 01 04 13

BEAULIEU 000166

**i. Infringement Of Copyright, Patent, Trademark Or Trade Secret**

"Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement".

However, this exclusion does not apply to infringement, in your "advertisement", of copyright, trade dress or slogan.

**j. Insureds In Media And Internet Type Businesses**

"Personal and advertising injury" committed by an insured whose business is:

(1) Advertising, broadcasting, publishing or telecasting;

(2) Designing or determining content of web sites for others; or

(3) An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs **14.a.**, **b.** and **c.** of "personal and advertising injury" under the Definitions section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

**k. Electronic Chatrooms Or Bulletin Boards**

"Personal and advertising injury" arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

**l. Unauthorized Use Of Another's Name Or Product**

"Personal and advertising injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

**m. Pollution**

"Personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**n. Pollution-related**

Any loss, cost or expense arising out of any:

(1) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

**o. War**

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

**p. Recording And Distribution Of Material Or Information In Violation Of Law**

"Personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

(1) The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

(2) The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

(3) The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transactions Act (FACTA); or

(4) Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits, or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

© Insurance Services Office, Inc., 2012

BEAULIEU 000167

## COVERAGE C — MEDICAL PAYMENTS

### 1. Insuring Agreement

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

    (a) The accident takes place in the "coverage territory" and during the policy period;

    (b) The expenses are incurred and reported to us within one year of the date of the accident; and

    (c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, X-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

### 2. Exclusions

We will not pay expenses for "bodily injury":

**a. Any Insured**

To any insured, except "volunteer workers".

**b. Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

**c. Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

**d. Workers' Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

**e. Athletics Activities**

To a person injured while practicing, instructing or participating in any physical exercises or games, sports, or athletic contests.

**f. Products-Completed Operations Hazard**

Included within the "products-completed operations hazard".

**g. Coverage A Exclusions**

Excluded under Coverage A.

## SUPPLEMENTARY PAYMENTS — COVERAGES A AND B

1. We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

**a.** All expenses we incur.

**b.** Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

**c.** The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

**d.** All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or "suit", including actual loss of earnings up to $250 a day because of time off from work.

**e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

**f.** Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

© Insurance Services Office, Inc., 2012

CG 00 01 04 13

BEAULIEU 000168

g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

(1) Agrees in writing to:

(a) Cooperate with us in the investigation, settlement or defense of the "suit";

(b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the "suit"; and

(b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b.(2) of Section I − Coverage A − Bodily Injury And Property Damage Liability, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when we have used up the applicable limit of insurance in the payment of judgments or settlements or the conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

## SECTION II − WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

BEAULIEU 000169

2. Each of the following is also an insured:

a. Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" or "volunteer workers" are insureds for:

(1) "Bodily injury" or "personal and advertising injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), to a co-"employee" while in the course of his or her employment or performing duties related to the conduct of your business, or to your other "volunteer workers" while performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" or "volunteer worker" as a consequence of Paragraph (1)(a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraph (1)(a) or (b) above; or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

(a) Owned, occupied or used by;

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by;

you, any of your "employees", "volunteer workers", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee" or "volunteer worker"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this Coverage Part.

3. Any organization you newly acquire or form, other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

c. Coverage B does not apply to "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

2. The General Aggregate Limit is the most we will pay for the sum of:

a. Medical expenses under Coverage C;

b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

c. Damages under Coverage B.

© Insurance Services Office, Inc., 2012

BEAULIEU 000170

3. The Products-Completed Operations Aggregate Limit is the most we will pay under Coverage **A** for damages because of "bodily injury" and "property damage" included in the "products-completed operations hazard":

4. Subject to Paragraph **2.** above, the Personal And Advertising Injury Limit is the most we will pay under Coverage **B** for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization.

5. Subject to Paragraph **2.** or **3.** above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   **a.** Damages under Coverage **A;** and

   **b.** Medical expenses under Coverage **C**

   because of all "bodily injury" and "property damage" arising out of any one "occurrence".

6. Subject to Paragraph **5.** above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage **A** for damages because of "property damage" to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you with permission of the owner.

7. Subject to Paragraph **5.** above, the Medical Expense Limit is the most we will pay under Coverage **C** for all medical expenses because of "bodily injury" sustained by any one person.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

### SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS

1. **Bankruptcy**

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

   **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

   **(1)** How, when and where the "occurrence" or offense took place;

   **(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

   **(1)** Immediately record the specifics of the claim or "suit" and the date received; and

   **(2)** Notify us as soon as practicable.

   You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.** You and any other involved insured must:

   **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

   **(2)** Authorize us to obtain records and other information;

   **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

   **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Legal Action Against Us**

   No person or organization has a right under this Coverage Part:

   **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

   **b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

   A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

BEAULIEU 000171

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a. Primary Insurance**

This insurance is primary except when Paragraph **b.** below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

(1) This insurance is excess over:

(a) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(i) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(ii) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(iv) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section I — Coverage **A** — Bodily Injury And Property Damage Liability.

(b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

(2) When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

(3) When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(a) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(b) The total of all deductible and self-insured amounts under all that other insurance.

(4) We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**c. Method Of Sharing**

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

**5. Premium Audit**

**a.** We will compute all premiums for this Coverage Part in accordance with our rules and rates.

**b.** Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period and send notice to the first Named Insured. The due date for audit and retrospective premiums is the date shown as the due date on the bill. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

**c.** The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

**6. Representations**

By accepting this policy, you agree:

**a.** The statements in the Declarations are accurate and complete;

BEAULIEU 000172

**b.** Those statements are based upon representations you made to us; and

**c.** We have issued this policy in reliance upon your representations.

### 7. Separation Of Insureds

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

**a.** As if each Named Insured were the only Named Insured; and

**b.** Separately to each insured against whom claim is made or "suit" is brought.

### 8. Transfer Of Rights Of Recovery Against Others To Us

If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

### 9. When We Do Not Renew

If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

If notice is mailed, proof of mailing will be sufficient proof of notice.

### SECTION V – DEFINITIONS

**1.** "Advertisement" means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

**a.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

**b.** Regarding web sites, only that part of a web site that is about your goods, products or services for the purposes of attracting customers or supporters is considered an advertisement.

**2.** "Auto" means:

**a.** A land motor vehicle, trailer or semitrailer designed for travel on public roads, including any attached machinery or equipment; or

**b.** Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**4.** "Coverage territory" means:

**a.** The United States of America (including its territories and possessions), Puerto Rico and Canada;

**b.** International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in Paragraph **a.** above; or

**c.** All other parts of the world if the injury or damage arises out of:

**(1)** Goods or products made or sold by you in the territory described in Paragraph **a.** above;

**(2)** The activities of a person whose home is in the territory described in Paragraph **a.** above, but is away for a short time on your business; or

**(3)** "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication;

provided the insured's responsibility to pay damages is determined in a "suit" on the merits, in the territory described in Paragraph **a.** above or in a settlement we agree to.

**5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

**6.** "Executive officer" means a person holding any of the officer positions created by your charter, constitution, bylaws or any other similar governing document.

**7.** "Hostile fire" means one which becomes uncontrollable or breaks out from where it was intended to be.

**8.** "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

**a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

**b.** You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

BEAULIEU 000173

**9.** "Insured contract" means:

**a.** A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

**b.** A sidetrack agreement;

**c.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**d.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**e.** An elevator maintenance agreement;

**f.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

Paragraph **f.** does not include that part of any contract or agreement:

**(1)** That indemnifies a railroad for "bodily injury" or "property damage" arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, road-beds, tunnel, underpass or crossing;

**(2)** That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

**(a)** Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

**(b)** Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

**(3)** Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in **(2)** above and supervisory, inspection, architectural or engineering activities.

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

**11.** "Loading or unloading" means the handling of property:

**a.** After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

**b.** While it is in or on an aircraft, watercraft or "auto"; or

**c.** While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

**12.** "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

**a.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**b.** Vehicles maintained for use solely on or next to premises you own or rent;

**c.** Vehicles that travel on crawler treads;

**d.** Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

**(1)** Power cranes, shovels, loaders, diggers or drills; or

**(2)** Road construction or resurfacing equipment such as graders, scrapers or rollers;

**e.** Vehicles not described in Paragraph **a., b., c.** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

**(1)** Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

**(2)** Cherry pickers and similar devices used to raise or lower workers;

**f.** Vehicles not described in Paragraph **a., b., c.** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

© Insurance Services Office, Inc., 2012

CG 00 01 04 13

BEAULIEU 000174

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

(1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

However, "mobile equipment" does not include any land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your "advertisement"; or

g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

15. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16. "Products-completed operations hazard":

a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy Schedule, states that products-completed operations are subject to the General Aggregate Limit.

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMs, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

**18.** "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

**a.** An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

**b.** Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

**21.** "Your product":

**a.** Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

**b.** Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

**c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.** "Your work":

**a.** Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(2) The providing of or failure to provide warnings or instructions.

© Insurance Services Office, Inc., 2012

CG 00 01 04 13

BEAULIEU 000176

# Deductible



**ZURICH**

| Policy No. | Eff. Date of Pol. | Eff. Date of End. |
|---|---|---|
|  |  |  |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the:
**Commercial General Liability Coverage Part**
**Employee Benefits Liability Coverage Part**
**Liquor Liability Coverage Part**
**Stop Gap Employers Liability Coverage Part**

### DEDUCTIBLE SCHEDULE

| Coverage | | Deductible Amount | Basis |
|---|---|---|---|
| Coverage    A. | "Bodily Injury" and "Property Damage" Liability All persons or organizations | 250,000 | Each "Occurrence" |
|  | "Bodily Injury" Liability Only All persons or organizations |  | Each "Occurrence" |
|  | "Property Damage" Liability Only All persons or organizations |  | Each "Occurrence" |
| Coverage    A. | "Bodily Injury" and "Property Damage" Liability |  | Each Claim |
|  | "Bodily Injury" Liability Only |  | Each Claim |
|  | "Property Damage" Liability Only |  | Each Claim |
| Coverage    B. | "Personal and Advertising Injury" Liability By offense – Any one person or organization | 250,000 | Each Claim |
| Coverage    C. | Medical Payments | 250,000 | Any One Person |
| Additional Coverage | Employee Benefits Liability | $25,000 | Each Act, Error or Omission |
| Additional Coverage | Fire Damage Limit | 250,000 | Each Fire |
| Additional Coverage | Stop Gap Employers Liability Stop Gap Employers Liability - disease |  | Each Accident Each "Employee" |
| Aggregate Deductible Amount | | | ☐ Adjustable at a rate        of per of ☐ Flat |
| Initial Exposure | | | |
| Minimum Aggregate Deductible Amount | | | |

U-GL-1326-B CW (10/2007)
Page 1 of 6

BEAULIEU 000182

**ALLOCATED LOSS ADJUSTMENT EXPENSE SELECTION SCHEDULE**

| | Select One | | |
|---|---|---|---|
| Option 1 | [X] | | As respects each Deductible Amount, you will reimburse us for all "allocated loss adjustment expense", even if there is no payment for other than "allocated loss adjustment expense". "Allocated loss adjustment expense" reimbursements will contribute toward your Deductible Amount and your Aggregate Deductible Amount as shown in the **Deductible Schedule**. |
| Option 2 | [ ] | | As respects each Deductible Amount, you will reimburse us for "allocated loss adjustment expense" as follows: |
| | | (a) | If the total amount payable for other than "allocated loss adjustment expense" as respects the basis for each Deductible Amount is equal to or less than the Deductible Amount(s) or if there is no amount payable other than "allocated loss adjustment expense", then you will reimburse us for all "allocated loss adjustment expense". "Allocated loss adjustment expense" reimbursements will not contribute toward either your Deductible Amount or your Aggregate Deductible Amount as shown in the **Deductible Schedule**; or |
| | | (b) | If the total amount payable for other than "allocated loss adjustment expense" exceeds the Deductible Amount, you will reimburse us a pro-rata share of total "allocated loss adjustment expense" based on the ratio of the Deductible Amount divided by the total amount payable for other than "allocated loss adjustment expense" as respects the basis for each Deductible Amount. "Allocated loss adjustment expense" reimbursements will not contribute toward either your Deductible Amount or your Aggregate Deductible Amount as shown in the **Deductible Schedule**. |
| Option 3 | [ ] | | As respects each Deductible Amount, you will reimburse us for all "allocated loss adjustment expense", even if there is no payment for other than "allocated loss adjustment expense". "Allocated loss adjustment expense" reimbursements will not contribute toward either your Deductible Amount or your Aggregate Deductible Amount as shown in the **Deductible Schedule**. |

**If no option is selected, Option 3 will apply.**

**A. How the Deductible Amount Applies**

You will reimburse us for the Deductible Amount(s) shown in the **Deductible Schedule** and for "allocated loss adjustment expenses" incurred based on the **Allocated Loss Adjustment Expense Selection Schedule**. The Deductible Amount(s) applies as follows:

1. If an Each Occurrence Deductible is shown, the Deductible Amount applies to all sums payable because of any one "Occurrence", regardless of the number of persons or organizations who sustain damages because of that "Occurrence".

2. If an Each Claim Deductible is shown, the Deductible Amount applies to all sums payable for each claim, sustained by any one person or organization.

   a. For Other than Coverage B, to all sums payable for each claim, sustained by any one person or organization, and

   b. For Coverage B, to all damages sustained by any one person or organization as the result of an offense.

3. Medical Payments - If an Any One Person limit is shown, the Deductible Amount applies to all sums payable to any one person as a result of an accident sustained by that person.

BEAULIEU 000183

4. Employee Benefits Liability - If an Each Act, Error or Omission Deductible is shown, the Deductible Amount applies to all sums payable for all damages sustained by any one "Employee", including the "Employee's" dependents and beneficiaries, because of acts, errors or omissions committed in the administration of employee benefit programs.

5. Liquor Liability - If a Common Cause Deductible is shown, the Deductible Amount applies to all sums payable for all injury sustained by one or more persons or organizations as the result of the selling, serving or furnishing of any alcoholic beverage to any one person.

6. Stop Gap Employers Liability - If an Each Accident Deductible is shown, the Deductible Amount applies to all sums payable as the result of an accident, regardless of the number of people who sustain damages because of that accident.

7. Stop Gap Employers Liability - disease - If an Each Employee Deductible is shown, the Deductible Amount applies to all sums payable because of any one disease, and applies separately to each affected "Employee".

**B. Deductible Provisions**

1. If more than one Deductible Amount applies to sums payable arising from the same "incident" because more than one Coverage applies, you will be responsible for each and every applicable Deductible Amount.

2. Deductible Amount(s) apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations.

3. Your obligation to pay the Deductible Amount(s) shown on this policy is not fulfilled by:

   a. The payment of a Deductible Amount under any other policy; or

   b. Any payment made by us or another insurance company;

   even if 3.a. or 3.b. above applies to the same "incident" as the Deductible Amount due under this policy.

4. If more than one policy issued by us applies to sums payable because of a single continuous "incident", the Deductible Amount(s) applies separately to each policy that we issue to which this endorsement or a similar Deductible Endorsement applies. Deductible Amounts also apply separately to each annual period and any remaining period of less than 12 months as described in **B.2.** above.

5. If a Coverage Part or Additional Coverage of this policy specifically applies a separate deductible(s):

   a. the separate additional deductible amount applies to any loss separately and before the Deductible Amount(s) shown on the Schedule of this endorsement; and

   b. the Deductible Amount(s) shown on the Schedule of this endorsement applies only if the loss exceeds the separate additional deductible amount described in 5.a. above, subject to the other terms and conditions of this endorsement.

**C. Aggregate Deductible Amount**

1. The Aggregate Deductible Amount shown in the **Deductible Schedule** is the most you must reimburse us for the sum of:

   a. all applicable Deductible Amount(s) as shown in the **Deductible Schedule**; and

   b. all applicable "allocated loss adjustment expense" in accordance with the **Allocated Loss Adjustment Expense Selection Schedule**, above.

BEAULIEU 000184

This single Aggregate Deductible Amount applies to the entire policy period and to any remaining extension period.

2.  If an Aggregate Deductible Amount is shown in the **Deductible Schedule** and is designated as adjustable, the final Aggregate Deductible Amount will be determined at the end of the policy period by an audit of your records, and will be based upon the Rate shown in the **Deductible Schedule** multiplied by the final audited Exposure. The amount shown in the **Deductible Schedule** as the Aggregate Deductible Amount is an estimated amount, and is based on an estimate of what the audit of your records will develop.

In no event will the final audited Aggregate Deductible Amount be less than the Aggregate Deductible Amount shown in the **Deductible Schedule**, unless a Minimum Aggregate Deductible Amount is shown in the **Deductible Schedule**. If a Minimum Aggregate Deductible Amount is shown, the final audited Aggregate Deductible Amount will not be less than the Minimum Aggregate Deductible Amount.

3.  If an Aggregate Deductible Amount is shown in the **Deductible Schedule** and is designated as Flat, the Aggregate Deductible Amount will not be adjusted. In no event will the Flat Aggregate Deductible Amount be less than or more than the Aggregate Deductible Amount shown in the **Deductible Schedule**.

4.  If no Aggregate Deductible Amount is stated in the **Deductible Schedule**, then your obligation to reimburse us for the sum of all applicable Deductible Amount(s) as shown in the **Deductible Schedule** and all applicable "allocated loss adjustment expense" in accordance with the **Allocated Loss Adjustment Expense Selection Schedule** above, is unlimited.

**D.  Allocated Loss Adjustment Expense Reimbursement**

In accordance with the **Allocated Loss Adjustment Expense Selection Schedule**:

1.  If Option 1 is selected, "allocated loss adjustment expense" reimbursements made by you contribute to your Deductible Amount and Aggregate Deductible Amount.

2.  If Option 2 or Option 3 is selected, then you will reimburse us for all or pro-rata "allocated loss adjustment expense", as may apply, in accordance with the **Allocated Loss Adjustment Expense Selection Schedule** above, even if the Deductible Amount or the Aggregate Deductible Amount, if applicable, is exceeded.

**E.  Application of the Deductible Amount to Payable Amounts**

1.  You will reimburse us for "allocated loss adjustment expense" according to the option selected in the **Allocated Loss Adjustment Expense Selection Schedule**.

2.  Upon settlement or final adjudication of a claim, we will apply the Deductible Amount against payable amounts as follows:

    a.  Sums other than those attributable to "allocated loss adjustment expense"; then

    b.  "Allocated loss adjustment expense" already reimbursed by you; then

    c.  "Allocated loss adjustment expense" yet to be reimbursed by you, if applicable.

**F.  Effect of Deductible Amount on Limits of Insurance**

The applicable limits of insurance for the coverage part to which a Deductible Amount applies will be reduced only by that portion of the Deductible Amount that is not attributable to "allocated loss adjustment expenses".

**G.  Conditions**

**1.  Voluntary Payments**

BEAULIEU 000185

If you voluntarily make any payment, assume any obligation or incur any expense, without our consent, then you do so at your own cost. Any such voluntary payment, assumed obligation or incurred expense does not contribute towards any applicable Deductible Amount(s) or Aggregate Deductible Amount under this policy.

**2. Application of Recovered Amounts**

We have your rights and the rights of persons entitled to the benefits of this insurance to recover sums that are reimbursable under this endorsement and any Deductible Amount from anyone liable for the injury or damages. You will do everything necessary to protect those rights for us and to help us enforce them.

If we recover any payment made under this policy from anyone liable for injury or damages, the recovered amount will first be applied to any payments made by us in excess of the Deductible Amount. The remainder of the recovery, if any, will then be applied to reduce the Deductible Amount reimbursed or reimbursable by you as respects that injury or damages.

**3. Payment of Amounts Owed Under This Endorsement**

a. We may pay any part or all of any Deductible Amount(s) or "allocated loss adjustment expense" to effect settlement of any claim and, upon notification of the action taken you will reimburse us for such part of any Deductible Amount(s) or "allocated loss adjustment expense" as shown on the billing from us. You must pay us for all amounts for which you are responsible under this endorsement and reimburse us for any such amounts that we pay by the due date shown on the billing from us.

b. If you fail to reimburse us for any amounts as required by this endorsement or policy, we may cancel this policy for nonpayment in accordance with the applicable law. Cancellation of this policy does not relieve you from any deductible obligations reimbursable by you.

c. The first Named Insured shown in the Declarations is authorized to and will reimburse us for all amounts paid by us on behalf of all "insureds".

d. Each Named Insured is jointly and severally liable for all reimbursements due to us under this endorsement, whether or not that Named Insured is involved in the claim, proceeding or "suit" causing any such amount to be due to us.

**H. Definitions**

1. "Allocated loss adjustment expense" is an expense directly allocable to a specific claim including but not limited to: all supplementary payments as set forth in this policy; all court costs, fees and expenses; all costs, fees and expenses for or incurred in connection with all attorneys, witnesses, experts, depositions, reported or recorded statements, summonses, service of process, legal transcripts or testimony, copies of any public records; alternative dispute resolution proceedings; interest; investigative services, non-employee adjusters, medical examinations, autopsies, medical cost containment; declaratory judgment, subrogation claims and proceedings, and any other fees, costs or expenses reasonably chargeable to the investigation, negotiation, settlement or defense of a claim or a loss under this policy.

2. "Incident", for purposes of this endorsement only, means an "occurrence", offense, claim, accident, act, error or omission, common cause, disease or any other event, as defined or used in our policy, to which a Deductible Amount(s) applies.

**I. Other Terms**

1. The terms of this insurance apply irrespective of the application of any Deductible Amount(s), including those with respect to:

a. Our right and duty to investigate or defend the insured against any "suits" seeking those damages; and

BEAULIEU 000186

    b.   Your duties in the event of a claim or circumstances likely to result in a claim.

2.   You understand that your duties under this endorsement may continue after this policy expires or is cancelled.

BEAULIEU 000187

FILED IN CLERK'S OFFICE
U.S. BANKRUPTCY COURT
NDGA ROME DIVISION

2017 SEP -1 AM 11:05

M. REGINA THOMAS
CLERK
BY____DM
DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION**

ORIGINAL

In re:                  :

                      :

BEAULIEU GROUP, LLC,    :     CASE NO. 17-41677-MGD

                      :     CHAPTER: 11

    Debtor.           :

                      :     JUDGE MARY GRACE DIEHL

## <u>NOTICE OF HEARING</u>

PLEASE TAKE NOTICE that Nancy Brogdon ("Movant") has filed a Motion for Relief from the Automatic Stay with the Court seeking an order granting the lifting of the automatic stay.

PLEASE TAKE FURTHER NOTICE that the Court will hold a hearing on the Motion for Relief from the Automatic Stay in Courtroom 342, United States Courthouse, 600 East First Street, Rome Georgia, at 10:15 A. M. on September 27, 2017.

Your rights may be affected by the Court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the Court to grant the relief sought in these pleadings or if you want the Court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the

1

Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing. The address of the Clerk's Office is: Clerk, U. S. Bankruptcy Court, Room 339, 600 East First Street Rome, Georgia 30161-3187. You must also mail a copy of your response to the undersigned at the address stated below.

If a hearing on the motion for relief from the automatic stay cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty days of filing the motion and agrees to a hearing on the earliest possible date. If a final decision cannot be rendered by the Court within sixty (60) days of the date of the request, Movant waives the requirement that a final decision be issued within that period. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

*[signature line on next page]*

2

Dated: August 31, 2017.

VAN SANT LAW, LLC

DAVID M. VAN SANT
Georgia Bar No. 725222
MICHAEL W. HORST
Georgia Bar No. 367837
*Counsel for Movant*

123 Tribble Gap Road
Cumming, GA 30040
T: 770.886.9199
F: 770.886.9133
E: david@vansantlaw.com
   michael@vansantlaw.com

3

## <u>CERTIFICATE OF SERVICE</u>

I certify that on August 31, 2017, I served a copy of the foregoing NOTICE

OF HEARING by first class U. S. Mail, with adequate postage prepaid on the

following persons or entities at the addresses stated:

J. Robert Williamson, Esq.                 Martin P. Ochs, Esq.
Ashley Reynolds Ray, Esq.              Office of the U. S. Trustee
Matthew W. Levin, Esq.          362 Richard Russell Federal Bldg.
Scroggins & Williamson, P.C.          75 Ted Turner Drive, SW
4401 Northside Parkway                 Atlanta, GA 30303
Suite 450
Atlanta, Georgia 30327

VAN SANT LAW, LLC

DAVID M. VAN SANT
Georgia Bar No. 725222
MICHAEL W. HORST
Georgia Bar No. 367837
*Counsel for Movant*

123 Tribble Gap Road
Cumming, GA 30040
T: 770.886.9199
F: 770.886.9133
E: david@vansantlaw.com
    michael@vansantlaw.com

4

U. S. BANKRUPTCY COURT / NORTHERN DISTRICT OF GEORGIA / ROME DIVISION

RECEIPT #00173682 (DM) OF 09/01/2017

```
ITEM  CODE  CASE           QUANTITY                AMOUNT  BY

  1   ST2  17-41677            1                 $ 181.00  Check/MO
             Judge  - Judge Mary Grace Diehl
             Debtor - BEAULIEU GROUP, LLC


TOTAL:                                          $ 181.00
```

FROM: David M. Van Sant, P.C.
      123 Tribble Gap Road
      Cumming, GA 30040